IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRUCE BITTAN, JACK ENRIGHT, and PATRICK SMITH, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BBG, INC,<br><br>Defendant. | Civil Action No. 24-1008-GBW |

## MEMORANDUM ORDER

Pending before the Court are:

1. Defendant BBG, Inc.'s ("Defendant" or "BBG") Motion to Transfer Venue to the U.S. District Court for the Northern District Of Texas, Dallas Division ("Motion to Transfer") (D.I. 15), which has been fully briefed (D.I. 16; D.I. 22; D.I. 24);

2. Plaintiff Bruce Bittan ("Mr. Bittan"), Plaintiff Jack Enright ("Mr. Enright"), and Plaintiff Patrick Smith's ("Mr. Smith") (together, "Plaintiffs") Motion to Compel Non-Party Subpoena Recipient Alera Group, Inc. to Produce Documents, and to Hold Alera Group, Inc. in Contempt of Court ("Motion to Compel") (D.I. 35), which has not been fully briefed, and

3. Letter briefs concerning whether the Court should "compel BBG to contact HR inTune to request documents responsive to Plaintiffs' Requests Nos 33 and 34" (D.I. 45; D.I. 46).

For the reasons below, the Court grants Defendant's Motion to Transfer (D.I. 15) and transfers this action to the Northern District of Texas, Dallas Division. Since the Court is granting Defendant's Motion to Transfer, the Court denies Plaintiffs' Motion to Compel (D.I. 35) and request to "compel BBG to contact HR inTune to request documents responsive to Plaintiffs'

Requests Nos 33 and 34" (D.I. 45) as moot without prejudice to refiling in the transferee court.

## I. BACKGROUND

On September 3, 2024, Plaintiffs filed a Collective and Class Action Complaint ("Complaint") (D.I. 1) in this Court against Defendant alleging that Defendant failed to pay overtime wages to certain employees in violation of the Fair Labor Standards Act ("FLSA") and various New York laws. On January 16, 2025, BBG filed its Motion to Transfer. D.I. 15. In support of its Motion to Transfer, BBG relies on various allegations in the Complaint and representations from its corporate representative, Blake Holman. These allegations and representations are summarized below.

Mr. Bittan resides in New York and "was employed by BBG through its New York office." D.I. 1 ¶ 6. Mr. Enright resides in New Jersey and "was employed by BBG through its New York office." D.I. 1 ¶ 7. Mr. Smith resides in Ohio and "was employed by BBG through its Columbus[, Ohio] office." D.I. 1 ¶ 8. Thus, Plaintiffs neither reside nor worked in Delaware. BBG is incorporated in Delaware and headquartered in Texas. D.I. 1 ¶ 9.

As to where the claims in this action arose, BBG represents that neither Plaintiffs nor the putative class worked in Delaware. D.I. 16 at 7 (citing D.I. 17, BBG's declaration from Blake Holman). BBG also represents that it "does not maintain an office in Delaware and has no employees who reside in Delaware; therefore, there is no possibility that future opt-in plaintiffs reside in Delaware." D.I. 16 at 7 (citing D.I. 17). BBG also represents that it "sets corporate policy from its headquarters in Dallas, Texas." D.I. 16 at 7 (citing D.I. 17). BBG further represents that its "executive team determined, implemented, and maintained the challenged policies and practices in dispute in this case—i.e., the classification and compensation of Plaintiffs— in Dallas." D.I. 16 at 7 (citing D.I. 17). BBG further represents that it "paid Plaintiffs' wages from Dallas." D.I. 16 at 7 (citing D.I. 17).

2

As to BBG's corporate representatives, third-party witnesses, and BBG's books, BBG represents that "its corporate representatives largely reside in and around Dallas, with the exception of its CEO, who resides near Atlanta, Georgia and its COO, who resides in Utah." D.I. 16 at 8. BBG represents that "the former CEO, CFO, HR Director, and HR personnel of BBG during the time Plaintiffs' claims allegedly accrued: (1) are no longer employed by BBG; (2) live in or within subpoena range of Dallas; and (3) would not be available to testify at trial in Delaware." D.I. 16 at 9. BBG represents that its "corporate and employee files and IT systems are maintained at its headquarters in Dallas and in cloud-based technology services maintained from Dallas." D.I. 16 at 10.

## II.    LEGAL STANDARD

Section 1404(a) of Title 28 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The Federal Circuit applies the law of the regional circuit on a motion to transfer pursuant to 28 U.S.C. § 1404(a). *See In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) (on mandamus review). Courts in the Third Circuit evaluate a motion to transfer under the factors outlined in *Jumara v. State Farm Insurance*, 55 F.3d 873, 879-80 (3d Cir. 1995). *See, e.g., In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (citing *Jumara*, 55 F.3d at 879-80). The movant has the burden to establish that the interests favor transfer. *See Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 436 (D. Del. 2015) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970)) (citing *Jumara*, 55 F.3d at 879).

The District Court must first decide whether the case could have been brought in the district where the movant wishes to transfer. *Jumara*, 55 F.3d at 878. If venue would have been proper in that district, the court then weighs whether the public and private interest factors favor transfer,

keeping in mind that "plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879 (citations omitted). The private interest factors to consider include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests [] include[]: [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (citations omitted). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (cleaned up); *see Ceradyne, Inc. v. RLI Ins. Co.*, C.A. No. 20-1398 (MN), 2021 WL 3145171, at *4 (D. Del. July 26, 2021). A plaintiff's choice of proper forum "is still the most important factor when a plaintiff has a principal place of business outside Delaware or has no connection to Delaware other than its choice to sue here, or other than its choice to sue here and its Delaware incorporation." *Express Mobile, Inc. v. Web.com Grp., Inc.*, C.A. No. 19-cv-1936-RGA, 2020 WL 3971776, at *2 (D. Del. July 14, 2020). "But, in the overall balancing, while such a plaintiff's choice will still be the most important factor, it will not dominate the balancing to the same extent as it otherwise might." *Id.*

### III. DISCUSSION

Since this action could have been brought in the Northern District of Texas, where "BBG maintains its corporate headquarters and principal place of business" (*see* D.I 16; D.I. 22 (not contesting as much)), the Court proceeds to analyze the *Jumara* factors, which, on balance, weigh

4

in favor of the transfer of this action to the Northern District of Texas, Dallas Division. The Court addresses each factor below.

**Plaintiffs' Forum Preference**: As discussed above, it "is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request and that choice should not be lightly disturbed." *Shutte*, 431 F.2d 22, 25. Here, "it is plainly rational and legitimate for [Plaintiffs] to choose to sue [Defendant] in [Defendant's] state of incorporation." *See FG SRC LLC v. Xilinx, Inc.*, No. 20-601-LPS, 2021 WL 495614, at *2 (D. Del. Feb. 10, 2021). That said, Plaintiffs reside in New York, New Jersey and Ohio (D.I. 1 ¶¶ 6-8) and, while Plaintiffs' choice of forum normally merits paramount consideration, that Plaintiffs reside outside of Delaware "diminishes . . . argument that [they are] at home in Delaware." *See Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, C.A. No. 13-824-GMS, 2014 WL 4829027, at *2 (D. Del. Sept. 25, 2014); *see* D.I. 22 at 6 (admitting that "Plaintiffs' choice is not a 'home forum'"). All said, Plaintiffs have "chosen the District of Delaware as the proper forum for this case, and this factor weighs against transfer despite the [admitted] lack of connection." *See Inst. for Env't Health Inc. v. Nat'l Beef Packing Co., LLC*, No. 23- 0826, 2024 WL 2208948, at *4 (D. Del. May 16, 2024).

**Defendant's Preference**: BBG's preference to litigate in the Northern District of Texas, Dallas Division weighs in favor of transfer given, at least, that the Northern District of Texas is where BBG "operates its principal place of business and headquarters." *See Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, C.A. No. 16-733-GMS, 2017 WL 1536394, at *4 (D. Del. Apr. 27, 2017); *see* D.I. 16 at 5.

**Whether the Claims Arose Elsewhere**: As described above, Plaintiffs allege that Defendant, in refusing to pay overtime wages to certain employees, violated the FLSA and various

5

New York laws. D.I. 1 ¶ 2. "A FLSA claim is considered to have arisen either where the plaintiffs worked (where the challenged policies were effectuated) or from the employer's headquarters (where the employer would have determined and maintained the challenged policies and practices)." *Stewart v. First Student, Inc.*, 639 F. Supp. 3d 492, 499 (E.D. Pa. Nov. 7, 2022).

Here, BBG raises five grounds to support its contention that the claims arose, not in Delaware, but in Texas. *First*, BBG observes that Plaintiffs did not work in Delaware. D.I. 16 at 7 (citing D.I. 17). *Second*, BBG represents that it "does not maintain an office in Delaware and has no employees who reside in Delaware; therefore, there is no possibility that future opt-in plaintiffs reside in Delaware." D.I. 16 at 7 (citing D.I. 17). *Third*, BBG represents that it "sets corporate policy from its headquarters in Dallas, Texas." D.I. 16 at 7 (citing D.I. 17). *Fourth*, BBG represents that its "executive team determined, implemented, and maintained the challenged policies and practices in dispute in this case—i.e., the classification and compensation of Plaintiffs— in Dallas." D.I. 16 at 7 (citing D.I. 17). *Fifth*, BBG represents that it "paid Plaintiffs' wages from Dallas." D.I. 16 at 7 (citing D.I. 17). In response, Plaintiffs concede that "the claims at issue may have arisen in Texas." D.I. 22 at 7. For these reasons, this factor weighs in favor of transfer.

**Convenience of the Parties**: BBG raises similar grounds for this factor as it did for the previous factor. For example, BBG represents that "BBG is headquartered in Dallas, and its corporate representatives largely reside in and around Dallas, with the exception of its CEO, who resides near Atlanta, Georgia and its COO, who resides in Utah." D.I. 16 at 8. In addition, BBG correctly observes that Plaintiffs reside in "New York, New Jersey, and Ohio" and, therefore, that "Plaintiffs will need to travel regardless of whether the case is transferred." D.I. 16 at 8. Plaintiff, on the other hand, contends that litigation in this District would not inconvenience BBG since

BBG is "unquestionably financially capable of litigating in this District." D.I. 22 at 8. BBG does not contest this characterization. *See* D.I. 24 at 3-4.

That BBG has the financial capability to litigate in this forum does mitigate its inconvenience. *See Magsil Corp. v. Seagate Tech.*, No. 08-cv-940, 2009 WL 1259043, at *1 (D. Del. Apr. 30, 2009) (holding that "defendants are large national and international corporations . . . and will not suffer meaningful financial hardship if required to litigate in Delaware"). However, it "is unreasonable to subject all parties to an inconvenient forum [like this one] when a forum exists [like the Northern District of Texas] that would significantly reduce the burden of at least one of the parties." *See Ithaca Ventures*, 2014 WL 4829027 at *4. Therefore, this factor weighs in favor of transfer.

**Convenience of the Witnesses**: The Court is to consider the convenience of witnesses "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. A "party witnesses or witnesses who are employed by a party carry no weight as each party is able and, indeed, obligated to procure the attendance of its own employees for trial." *Dialect, LLC v. Google, LLC*, No. CV 23-378-GBW, 2024 WL 1328908, at *3 (D. Del. Mar. 28, 2024).

Here, BBG represents that "the former CEO, CFO, HR Director, and HR personnel of BBG during the time Plaintiffs' claims allegedly accrued: (1) are no longer employed by BBG; (2) live in or within subpoena range of Dallas; and (3) would not be available to testify at trial in Delaware." D.I. 16 at 9. BBG further represents that these "witnesses were instrumentally involved in determining, implementing, and maintaining the challenged policies and practices in dispute in this case—i.e., the classification and compensation of Plaintiffs." D.I. 16 at 9. Plaintiffs

7

concede that "some of BBG's former employees may reside outside the subpoena power of the District of Delaware." D.I. 22 at 10.

Accordingly, there are witnesses that "are within the subpoena power of the Northern District of [Texas]." *Dialect*, 2024 WL 1328908, at *3. "Given these witnesses have no current relationship with [BBG] is sufficient to provide some reason to believe that they would refuse to testify." *See id.* (cleaned up); *see also Williamson v. Google Inc.*, No. CV 14-216-GMS, 2015 WL 13311284, at *2 (D. Del. Mar. 2, 2015) ("Google need not prove that its identified witnesses may actually be unavailable for trial in Delaware. It is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe that those witnesses will refuse to testify absent subpoena power." (cleaned up)).

Plaintiffs correctly observe that modern technology may mitigate inconvenience arising from testimony from those witnesses that reside outside of this District. *See* D.I. 22 at 10. However, the fact remains that there is sufficient reason at this stage to believe that some of the witnesses, with testimony that would be pertinent for the resolution of Plaintiffs' FSLA claims, reside, not in this District, but in the Northern District of Texas. Therefore, this factor weighs in favor of transfer.

**Location of Books and Records**: BBG asserts that its "corporate and employee files and IT systems are maintained at its headquarters in Dallas and in cloud-based technology services maintained from Dallas." D.I. 16 at 10. However, "[r]ecent technological advances have reduced the weight of this factor to virtually nothing." *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011). Thus, this factor is essentially neutral.

**Enforceability of the Judgment**: The parties agree this factor is neutral. D.I. 16 at 11; D.I. 22 at 12.

**Practical Considerations**: Neither party advances reasons not otherwise addressed elsewhere in the parties' briefs and, thus, this factor is neutral.

**Relative Administrative Difficulty**: "According to the most recent data provided by the United States Courts, the weighted case filings per active judgeship in this District [for the twelve month period ending June 30, 2025] were [618]." *See Dialect*, 2024 WL 1328908, at *4; *see also* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf. "By comparison, the weighted case filings per active judgeship in the Northern District of [Texas] for that period were [601]." *See Dialect*, 2024 WL 1328908, at *4; *see also* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf. In addition, pending cases per judgeship for the same time period ending on June 30, 2025 in this District were 570, as compared to pending cases per judgeship for the same time period ending on June 30, 2025 in the Northern District of Texas at 522. U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf. Finally, the median time from filing to trial in civil cases during the same time period in this District was 35 months and in the Northern District of Texas was 24.4 months. Thus, the relative administrative difficulty in both districts is about the same. Therefore, this factor is neutral.

**Local Interest**: Here, the litigation includes "a Defendant [incorporated in] Delaware, but headquartered in [the Northern District of Texas]." *See Harris v. Lord & Taylor LLC*, No. CV 18-521 (MN), 2019 WL 1854562, at *5 (D. Del. Apr. 25, 2019). "Given the competing interests of this district and the [Northern District of Texas], the Court finds this factor to be neutral. *See id.*

**Public Policies of the Fora**: This factor is neutral because Plaintiffs do not reside in "Delaware" and "the defendant is a Delaware corporation" that "does not want to litigate here." *See Take2 Techs. Ltd. v. Pac. Biosciences of California, Inc.*, No. CV 22-1595-WCB, 2023 WL 4930359, at *10 (D. Del. Aug. 2, 2023) (citation omitted).

**Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases**: The parties agree this factor is neutral. *See* D.I. 16 at 13; D.I. 22 at 14.

## IV.  CONCLUSION

As described above, the named Plaintiffs reside in New York, New Jersey, and Ohio and worked in New York and Ohio. BBG has no office in Delaware and has no employees who work or reside in Delaware. It is not foreseeable that any opt-in plaintiffs could have worked in Delaware. Since Plaintiffs are not at home in this jurisdiction, Plaintiffs' preference for this forum does not dominate the balancing to the same extent it otherwise would. Moreover, BBG is headquartered in the Northern District of Texas. The claims appear to have arisen in the Northern District of Texas. The majority of relevant witnesses from BBG appear to reside in the Northern District of Texas. The majority of third-party witnesses that are former employees of BBG likewise appear to reside in the Northern District of Texas. Thus, the majority of operative events in this action have occurred or do occur in the Northern District of Texas and the *Jumara* factors, on balance, weigh in favor of transfer.

For all these reasons, the Court grants BBG's Motion to Transfer Venue to the U.S. District Court for the Northern District Of Texas, Dallas Division (D.I. 15). Since the Court is granting Defendant's Motion to Transfer, the Court denies Plaintiffs' Motion to Compel Non-Party Subpoena Recipient Alera Group, Inc. to Produce Documents, and to Hold Alera Group, Inc. in Contempt of Court (D.I. 35), and the request from Plaintiffs in their letter brief to "compel BBG to contact HR inTune to request documents responsive to Plaintiffs' Requests Nos 33 and 34" (D.I.

45), as moot without prejudice to refiling in the Northern District of Texas, Dallas Division.

WHEREFORE, at Wilmington this 29th day of September 2025, **IT IS HEREBY ORDERED** that Defendant's Motion to Transfer Venue to the U.S. District Court for the Northern District of Texas, Dallas Division (D.I. 15) is **GRANTED**. Plaintiffs' Motion to Compel Non-Party Subpoena Recipient Alera Group, Inc. to Produce Documents and to Hold Alera Group, Inc. in Contempt of Court (D.I. 35), and the request from Plaintiffs in their letter brief to "compel BBG to contact HR inTune to request documents responsive to Plaintiffs' Requests Nos 33 and 34" (D.I. 45), are **DENIED-AS-MOOT** without prejudice to refiling in the Northern District of Texas, Dallas Division.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE