# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRUCE BITTAN, JACK ENRIGHT, and PATRICK SMITH, individually and on behalf of all persons similarly situated | § § § | |
| | § | CIVIL ACTION NO. 3:25-CV-2839-S |
| v. | § | |
| | § | |
| BBG, INC. | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Plaintiffs' Opposed Motion for Collective Certification and Issuance of Notice Pursuant to 29 U.S.C. § 216(b) ("Motion") [ECF No. 77]. The Court has reviewed the Motion, Plaintiffs' Memorandum of Law in Support of the Motion ("Plaintiffs' Brief") [ECF No. 78], Defendant BBG, Inc.'s Response in Opposition to the Motion and Brief in Support ("Response") [ECF No. 87], Plaintiffs' Reply in Support of the Motion ("Reply") [ECF No. 88], and the applicable law. For the following reasons, the Court **GRANTS** the Motion to the extent it seeks collective certification and issuance of notice. As to the contents and manner of the notice, the Court defers its ruling until after the parties confer.

## I. BACKGROUND

This case arises out of a dispute over overtime wages. Plaintiffs Jack Enright and Patrick Smith,[1] along with the employees they seek to include in this action, "were or are employed by Defendant [BBG, Inc.,] as Appraisal Analysts, Research Appraisers, Trainee Appraisers, and other substantially similar positions ([collectively,] 'Appraisers')." Collective and Class Action Compl.

---

[1] Plaintiff Bruce Bittan is only involved in the putative class action portion of this case, which relates to New York employees. *See* Collective and Class Action Compl. [ECF No. 1] ¶ 17; Pls.' Br. 1 n.2. Because the class action is not at issue in the Motion, the Court will not discuss Bittan in this Memorandum Opinion and Order.

("Complaint") [ECF No. 1] ¶ 1. Defendant is a real estate services company that provides, among other services, property appraisals. Resp. 5.

Appraisers work on teams with Certified Real Estate Appraisers ("Certified Appraisers"), who have a certification that Appraisers do not have. Pls.' Br. 4-5; Resp. 5, 10. Appraisers help Certified Appraisers produce real estate appraisals setting forth the estimated value of a given property for Defendant's clients. Pls.' Br. 6; Resp. 5-6. Defendant imposes productivity requirements on at least some Appraisers, such as gross monthly revenue and/or yearly revenue goals, and Appraisers are required to complete their assigned reports within a set amount of time. Pls.' Br. 10; Resp. 6. Appraisers "routinely" work more than forty hours per week to meet Defendant's requirements. Pls.' Br. 11. However, because Defendant classifies Appraisers as exempt employees under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., Appraisers do not receive overtime compensation. Pls.' Br. 1, 12. Instead, Appraisers are paid on a salary and/or fee basis, the latter of which is calculated as a "percentage of the net appraisal fee clients paid [Defendant]." *Id.*; *see also* Resp. 6-7.

Plaintiffs brought the instant lawsuit under the FLSA to challenge Defendant's refusal to pay them overtime compensation based on its classification of Appraisers as exempt employees. Compl. ¶¶ 23, 66-70. Plaintiffs assert their FLSA claim "on behalf of themselves and . . . similarly situated persons." *Id.* ¶ 16.

## II. LEGAL STANDARD

The FLSA requires employers to pay nonexempt employees for overtime hours worked at a rate of one and one-half times their regular rate. 29 U.S.C. § 207(a). Exempt employees, however, need not be paid overtime. *See id.* § 213(a). There are four common exemptions—for executive, administrative, professional, and highly compensated employees—each with its own

set of prerequisites.[2] *Guilbeau v. Schlumberger Tech. Corp.*, 178 F.4th 922, 925 (5th Cir. 2026) (citation omitted).

An FLSA case may be brought by an employee "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). This type of group litigation is known as a collective action. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 433 (5th Cir. 2021). Before allowing a case to proceed as a collective action under the FLSA, courts must "identify . . . what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441. In conducting the similarly situated analysis, courts may consider: (1) the employees' disparate factual and employment settings; (2) defenses available to the defendant that may be individual to each employee; and (3) fairness and procedural considerations. *See Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336-37 (5th Cir. 2023) (citations omitted). Courts should ask "whether merits questions can be answered collectively" or whether they would require "highly individualized inquir[ies]." *Swales*, 985 F.3d at 442. It is the plaintiff's burden to establish that the proposed collective is similarly situated. *Id.* at 443. And courts have "broad, litigation-management discretion" in determining whether putative collective action members are similarly situated. *Id.*

## III. ANALYSIS

Plaintiffs seek to certify the following collective:

> All individuals who worked for BBG, Inc. as Appraisal Analysts, Trainee Appraisers, Researcher Appraisers, and those in similar positions who did not hold a Certified Real Estate Appraiser license (collectively, "Appraisers") in the United States and who were not paid overtime compensation when they worked over forty (40) hours in a week between September 18, 2022 and the present (the "FLSA Collective").

---

[2] Neither party clarifies which specific exemption(s) allegedly apply to the Appraisers.

Pls.' Br 2. The Court first analyzes whether the members of the proposed collective are similarly situated under the principles laid out above. Answering this question in the affirmative, the Court turns to the provision of notice to potential collective action members.

### *A. Certification*

In this case, the "merits question," *Loy*, 71 F.4th at 337, is whether Defendant properly classified Appraisers as exempt and thus appropriately denied them overtime payment. In other words, Plaintiffs must demonstrate that "the members of the proposed collective are . . . not exempt from [the FLSA's overtime pay] protections" and that Defendant "engaged in a similar practice of denying overtime pay to nonexempt employees." *Rosales v. Indus. Sales & Servs., LLC*, No. 6:20-CV-00030, 2021 WL 4480747, at *9 (S.D. Tex. Sep. 30, 2021).

#### *i. Factual and Employment Settings*

To determine whether the merits question can be answered collectively, the Court first "determine[s] whether putative collective members possess similar work settings." *Francis-Luster v. Kelley L. Firm, P.C.*, No. 3:19-CV-2708-L-BK, 2022 WL 822468, at *3 (N.D. Tex. Feb. 10, 2022) (citation omitted), *report and recommendation adopted by* 2022 WL 575566 (N.D. Tex. Feb. 25, 2022). The Court evaluates the employees' "job duties, geographic location, supervision, and salary."[3] *Id.* (citation omitted). Where a proposed collective action challenges whether employees are properly classified as exempt, job duties and compensation are particularly relevant.[4] *See* 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any particular employee

[3] In this case, neither party argues that differences in location and supervision affect the analysis except to the extent that such differences impact other facets of Appraisers' work settings, such as compensation and productivity requirements. *See* Resp. 7, 11. Therefore, the Court does not separately analyze these two considerations.

[4] Specifically, the exemptions for executive, administrative, professional, and highly compensated employees all have three prerequisites: (1) the employee must meet certain criteria concerning the

must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."); *Pacheco v. Aldeeb*, No. 5:14-CV-121-DAE, 2015 WL 1509570, at *7 (W.D. Tex. Mar. 31, 2015) ("The 'similarly situated' inquiry requires similarity in job duties and pay scheme in part because those factors determine whether an employee is exempt from the FLSA's requirements."). Additionally, "[t]he presence of a common policy, plan, or practice affecting all putative class members . . . can be helpful in assessing" the first factor. *Frances-Luster*, 2022 WL 822468, at *3 (citation omitted).

*a. Job Duties*

"[I]n showing that a proposed collective is similarly covered by the FLSA's overtime-pay protections, it is critical for a plaintiff to demonstrate that members of the proposed collective perform similar job duties entitling them to such protection." *Rosales*, 2021 WL 4480747, at *9. This is so because whether an employee is properly classified as exempt largely turns on "the job duties he or she performs." *Id.* (citation omitted). Here, Plaintiffs submitted declarations from multiple Appraisers that show that they all perform highly similar job duties, including conducting inspections, gathering property data, and helping draft appraisal reports. *See, e.g.*, Pls.' Br., Ex. 1 [ECF No. 78-2] ¶¶ 4, 10; Ex. 2 [ECF No. 78-3] ¶¶ 7-8; Ex. 4 [ECF No. 78-5] ¶ 6; Ex. 8 [ECF No. 78-9] ¶¶ 6, 9-10. The declarants also stated that based on their observations and experience, other Appraisers "conducted the same job duties in a similar manner." Pls.' Br., Ex. 5 [ECF No. 78-6] ¶ 10; *see also, e.g.*, Pls.' Br., Ex. 6 [ECF No. 78-7] ¶ 10; Ex. 7 [ECF No. 78-8] ¶ 9; Ex. 9 [ECF No. 78-10] ¶ 14. And Defendant "concedes that—at a general level—Appraisers perform similar job duties." Resp. 10.

performance of executive, administrative, and professional duties; (2) the employee must meet certain income thresholds; and (3) the employee must be paid on a salary basis. *Guilbeau*, 178 F.4th at 925 (citations omitted).

In performing these duties, Plaintiffs claim that Appraisers are instructed to "follow uniform guidelines" and use "standardized checklists and templates." Pls.' Br. 8-10. Additionally, Appraisers' work is "subject to review, revision, and approval of a Certified Appraiser." *Id.* at 5. Defendant presents Appraisers' work somewhat differently, contending that "each exercises independent discretion and professional judgment in daily work." Resp. 10. Regardless of which party's position more accurately reflects Appraisers' level of discretion and independent judgment, both parties' assertions demonstrate a level of conformity among Appraisers that supports resolution of the FLSA claim on a collective basis.

Defendant argues, however, that Appraisers' work settings differ because they are subject to "materially different productivity expectations." *Id.* Appraisers "d[o] not need to be subject to identical productivity requirements to be similarly situated." *Loy*, 71 F.4th at 338. The declarants in this case uniformly stated that they were subject to productivity requirements that necessitated working more than forty hours per week. Pls.' Br., Ex. 1 ¶¶ 16-17, 19-20; Ex. 2 ¶¶ 14, 18; Ex. 3 [ECF No. 78-4] ¶¶ 9-10; Ex. 4 ¶¶ 8-9; Ex. 5 ¶¶ 11-13; Ex. 6 ¶¶ 12-15; Ex. 7 ¶¶ 11-12; Ex. 8 ¶¶ 14-15; Ex. 9 ¶¶ 16, 18; *see also* Reply 5 ("Plaintiffs and Appraisers are similarly situated in that they are all subject to productivity requirements that effectively necessitate working over forty (40) hours per week[.]"). And Defendant does not explain how differences in productivity requirements are material to the exemption analysis. "There is need for care in evaluating distinctions among employees, but those distinctions must make a difference relevant to the legal issues presented." *Loy*, 71 F.4th at 339 (citation omitted). At this stage, it does not appear that differences in productivity requirements impact the legal issues in this case.

For purposes of determining whether Appraisers were non-exempt employees entitled to overtime pay, the Court concludes that Appraisers' job duties are sufficiently similar.

*b. Compensation*

In the exemption analysis, an employee's compensation is relevant because, to be properly classified as exempt, an employee must be paid on a salary basis. *Guilbeau*, 178 F.4th at 925 (citation omitted). Plaintiffs assert that Appraisers are paid "on a fee split format" either initially or after a certain period of time and that the fee split is "similarly calculated for each Appraiser." Pls.' Br. 12. Defendant counters that "compensation structures for Appraisers vary significantly," including "fee-split, commission-based, salary-based, and hourly arrangements." Resp. 11.

It appears that Defendant contests the Court's ability to resolve, on a collective basis, whether Appraisers were paid on a salary basis. *See Guilbeau*, 178 F.4th at 925 (noting that there are two ways to show "exempt salary-basis compensation" (citation omitted)). But Defendant overstates the differences in how Appraisers were paid. Five of nine declarants state that they were initially paid a salary and then transitioned to being paid on a fee basis. *See* Pls.' Br., Ex. 2 ¶ 4; Ex. 4 ¶ 4; Ex. 6 ¶ 5; Ex. 7 ¶ 16; Ex. 9 ¶ 4. Three of the remaining four were paid only on a fee basis. *See* Pls.' Br., Ex. 1 ¶ 7; Ex. 3 ¶ 4; Ex. 5 ¶ 5. The remaining employee was paid a salary and resigned before Defendant transitioned her pay structure to be based on fees. Pls.' Br., Ex. 8 ¶ 4. In sum, all of the declarants attested that they were paid one of two ways during their tenure with Defendant and further testified that all Appraisers were paid similarly. *See, e.g.*, Pls.' Br., Ex. 1 ¶ 8 ("It was my understanding that all other Appraisal Analysts were . . . paid on a fee basis[.]"); Ex. 2 ¶ 5 (stating that a review of commission reports for other Appraisal Analysts revealed that "they were paid on fee splits"); Ex. 7 ¶ 17 ("I understand that the other Appraisal Analysts were also paid on a fee basis, which I know from working with them in the same office, working on reports together, and discussing pay with them.").

The Court concludes that relatively minor differences in compensation will not prevent the Court from determining, on a collective basis, whether Appraisers were paid on a salary basis such that they were properly classified as exempt employees.

*c. Common Policy*

Finally, a putative collective may be similarly situated if the employees were "subject to the same [overtime] pay policy." *Torres v. Chambers Protective Servs., Inc.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *6 (N.D. Tex. Aug. 5, 2021). Here, Appraisers are uniformly classified as exempt and, for that reason, denied payment for overtime hours worked. *See* Resp. 11; Pls.' Br. 1; Reply 4. Thus, Appraisers were subject to a common policy.

* * *

For all of the above reasons, the Court concludes that the similarities in Appraisers' factual and employment settings weigh in favor of certification.

*ii. Defenses*

The second "factor weighs against finding sufficient similarity when defenses are individualized and would thus prevent an efficient collective action." *Francis-Luster*, 2022 WL 822468, at *4 (citation omitted). Defendant does not identify any individualized defenses it might assert that would defeat certification. And where, as here, "the plaintiffs assert homogenous facts," "[c]ollective adjudication of exemption defenses is proper." *Radford v. Pevator Cos.*, No. 17-3381, 2019 WL 7282110, at *4 (S.D. Tex. Dec. 27, 2019) (citation omitted). The lack of individualized defenses weighs in favor of certification.

*iii. Fairness and Procedure*

The Court next considers matters of fairness and procedure. To do so, the Court examines "the primary objectives of the FLSA . . . collective action: (1) to lower costs to the plaintiffs

through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 743 (W.D. Tex. 2018) (citation omitted). The Court also assesses "whether the case can be coherently managed in a manner that will not prejudice any party." *Francis-Luster*, 2022 WL 822468, at *4 (citation omitted).

The Court's conclusions above support a finding that allowing Appraisers to proceed collectively would lower costs through the pooling of resources and would allow the Court to efficiently resolve the common issues of law and fact arising out of Defendant's classification of Appraisers as exempt. *See Pacheco*, 2015 WL 1509570, at *7 ("Requiring a prospective class to share similar job requirements and pay provisions ensures the economy of scale and judicial efficiency envisioned by the FLSA . . . ."). And no party will be prejudiced by the certification of Plaintiffs' proposed collective. Accordingly, fairness and procedural considerations weigh in favor of certification.

* * *

Because similarities in Appraisers' factual and employment settings, lack of differences in Defendant's defenses, and matters of fairness and procedure all weigh in favor of certification, the Court certifies Plaintiffs' proposed FLSA collective.

### *B. Notice*

Because the Court has determined that the Appraisers are similarly situated, the next step is authorizing the sending of notice to potential opt-in plaintiffs. *Floyd v. Stryker Corp.*, No. 3:22-CV-1131-B, 2024 WL 24341, at *2 (N.D. Tex. Jan. 2, 2024) (citation omitted). Plaintiffs request the issuance of notice to potential collective members by "U.S. Mail, electronic mail, and text message." Pls.' Br. 19. Plaintiffs filed their proposed notice. *See* Pls.' Br., Ex. 10 [ECF No. 78-11].

Defendant objects to the "language, form, and structure of the proposed notice." Resp. 12-13. Having reviewed the parties' disputes, the Court concludes that the parties should meet and confer regarding the notice and consent forms to be issued, along with the method(s) for delivery of the notice.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Opposed Motion for Collective Certification and Issuance of Notice Pursuant to 29 U.S.C. § 216(b) [ECF No. 77] to the extent it seeks collective certification and issuance of notice.

The Court **ORDERS** the parties to meet and confer about the form, language, and contents of the notice and consent forms as detailed above. By no later than **October 15, 2026**, the parties shall file either an agreed notice and consent form or, if there is no agreement, separate proposals for the notice and consent form.

**SO ORDERED.**

SIGNED September 24, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**